IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVENTOR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   1:13-cv-00096 (GMS) |
| | ) | |
| | ) | |
| WAL-MART STORES INC. , | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| INVENTOR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   1:14-cv-00185 (GMS) |
| | ) | |
| | ) | |
| | ) | |
| K-MART CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| INVENTOR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   1:14-cv-00448 (GMS) |
| | ) | |
| | ) | |
| BED BATH & BEYOND, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Caption continued on the next page.

INVENTOR HOLDINGS, LLC,         )
                                       )
           Plaintiff,        )
                                       )
      v.                     )   Civil Action No.   1:14-cv-00730 (GMS)
                                       )
                                     )
SEARS, ROEBUCK & COMPANY     )
And SEARS HOLDINGS             )
MANAGEMENT CORPORATION     )
                                     )
         Defendant.      )
                                     )

## SPECIAL MASTER OPINION AND ORDER

By Order dated July 21, 2014, I was appointed by the Court to resolve a dispute regarding a jointly-proposed protective order.   The infringement litigation against each defendant involves the '582 patent which asserts a "Method and System for Processing Payments for Remotely Purchased Goods."   The plaintiff is a non-practicing entity which is the assignee and owner of the patent rights.   Although the parties agree on most of the provisions of the proposed protective order, they disagree with respect to a few important features, including the scope of a prosecution bar, the use of laptop computers by plaintiff's attorneys and experts in the stand-alone computer access facility and the extent to which the plaintiff can obtain hard-copies of source code pages.

To assist me in this undertaking, the parties have provided written materials, case law, and proposed versions of the protective order.   I held a hearing on August 19, 2014 during which the parties had the opportunity to orally present their respective positions.

By way of background, I note that rather than a defense-proposed protective order, the one being addressed is bilateral in the sense that apparently all parties concede the necessity of such an order.   The plaintiff itself has implicitly contemplated and acknowledged the potential significant negative impact that revelation of the defendants' critical proprietary information would generate.   Accordingly, a FRCP 26(c)(1) threshold inquiry to determine the question of good cause is unnecessary.   Nevertheless, I appreciate that the plaintiff has interests which must be considered, as well as those of the entities whose trade secrets, in this case their respective source codes, are subject to being accessed by the terms of the protective order[1].

The first issue for me to decide relates to the prosecution bar.   The inclusion of a prosecution bar in a protective order is a matter governed by Federal Circuit law. *In re Deutsche Bank Trust Company Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).   It is incumbent upon me to decide the issue based on the specific facts presented. *Id.* at 1379.   Much of the inquiry relating to the prosecution bar question must occur on "a counsel-by-counsel basis". *U.S. Steel Corporation v. U. S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 1196965, *2 (D. Del. 2004).

Will the attorneys upon whom the plaintiff will rely to prosecute this litigation be able to also engage in certain other conduct during the litigation or post-litigation; i.e., will those lawyers be exempt from the prosecution bar?   The plaintiff seeks a "limited" exemption covering re-examination, inters partes review and covered business method review in the Patent

---

[1] My understanding is that, unless a defendant agrees otherwise, the plaintiff, per ¶9(b) of the proposed protective order, has committed to have its agents access each defendant's source code at an office of the latter's counsel within the judicial district where that code is stored in the ordinary course of business. Presumably, that will require the plaintiff's agents to physically present themselves at a number of different locations.

and Trademark Office.   The defendants want to preclude litigation counsel from any such activity.

The plaintiff misconstrues the burden applicable to this exemption question.   Although it is, in the first instance, incumbent upon the party seeking a prosecution bar to demonstrate a need for such, *Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*, 2011 WL 197811, \*1 (N.D. Calif. 2011), we are past that juncture since all parties agree that, given the current pervasive use of prosecution bars in patent litigation, one is appropriate here. So, determining the existence and extent of an exemption shifts the burden to the party seeking to have its counsel participate in post-grant proceedings at the PTO. *In re Maxim Integrated Products, Inc.*, 2012 WL 5398858, \*3 (W.D. Pa. 2012); *EPL Holdings, LLC. v. Apple, Inc.*, 2013 WL 2181584, \*2 (N.D. Calif. 2013).

There are two threshold propositions that bear noting: (i) Inventor Holdings is a non-practicing entity, and (ii) plaintiff's litigation counsel have not advised, and will not be advising their client concerning patent applications or prosecution.   This latter point means that, in the event the plaintiff will appear at the PTO with respect to claims raised by the '582 patent, it will have separate counsel participating there for such purposes.   However, plaintiff's litigation counsel want to be able to consult with plaintiff's PTO counsel, explaining that coordination is necessary to avoid taking inconsistent positions concerning, e.g., claims construction, since positions taken at the PTO impact litigation.

What seems clear initially is both that (a) the plaintiff's litigation counsel are not presently "competitive decision-makers" and (b) Inventor Holdings will not sustain injury if litigation counsel is precluded from participating as prosecution counsel, because litigation counsel have not been nor will they be involved directly in any PTO proceeding.

However, the ultimate concern is the risk of inadvertent disclosure of defendants' proprietary information if litigation counsel consults with prosecution counsel in connection with the latter's efforts on plaintiff's behalf at the PTO.   Judge Sleet has highlighted this concern previously, emphasizing that the party seeking an exemption must show good cause, which requires the showing of "a clearly defined and serious injury" in terms of a parties' choice of counsel [a non-issue here] and that competitive decision-making will not be implicated. *Bear Creek Technologies, Inc. v. Verizon Services Corp.*, 2012 WL 3190762, *2 (D. Del. 2012).   *See, also, Edward Lifesciences AG v. CoreValue, Inc.*, 2011 WL 10565589 (D. Del. 2011).   The latter concern was tackled by Judge Robinson very recently in *Versata Software, Inc. v. Callidus Software, Inc.*, 2014 WL 1117804, *1, 2 (D. Del. 2014)[2].   Though allowing a "limited" prosecution bar exemption regarding "all reexaminations, inter partes reviews, and any other post-grant review proceeding" so as to "coordinate coherent and consistent positions in the various proceedings", the Court there imposed a strict prohibition of consultation between attorneys designated to participate in review proceedings and attorneys who view highly confidential source code in the context of litigation.   The trigger for the prosecution bar applying was a lawyer's review of source code. *Id.*

Under the circumstances, because Inventor Holdings has not persuaded me that the risk of inadvertent disclosure of highly confidential information would not occur under any of the scenarios that it requests be permitted, a limited prosecution bar exemption similar to the one

---

[2] This opinion seems at odds with Judge Robinson's earlier opinion in *Kenexa Brassring, Inc. v. Taleo Corp.*, 2009 WL 393782, *2 (D. Del. 2009)[where the Court allowed litigation counsel to be involved in reexamination including inter partes reexamination because such would not likely implicate the defendant's "irrelevant" confidential information] and with Magistrate Judge Thynge's opinion in *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184 (D. Del. 2010) upon both of which Inventor Holdings relies.

noted above in *Versata Software* seems appropriate in this case. Given that there could actually be five lawyers on the plaintiff's litigation team soon, rather than three, plaintiff's litigation counsel should be able to implement a response to the potentially irreconcilable situation created by access to source code on one hand and possible proceedings at the PTO on the other. Thus, there is a viable mechanism to reconcile the various competing claims for litigation counsel's advice.

Two other collateral issues remain to be decided in the context of the prosecution bar. First, the duration of the bar should be two years since that is the period of time to which the parties have already agreed[3]. The second issue is subject matter. Plaintiff proposes limiting the scope of the prosecution bar to "the technology of the patent-in-suit", i.e., local processing of payments for remotely purchased goods, not payments online. The defendants assert that a more pervasive reach is appropriate, i.e., the scope of the bar should extend to "the broad subject matter of the patent-in-suit". *Commissariat A L'Energie*, 2004 WL 1196965, *supra* at *3. Especially as a non-practicing entity, the risk is that the ambitions of the plaintiff are quite broad in terms of the reach of the technology they own. The defendants' have the better position on this issue and I adopt it.

Regarding the laptop computer issue, plaintiff insists its attorneys and experts must have "personal" portable devices available to "facilitate the taking of notes" while they are being given access to the defendants' source code. The defendants' proposed provision prohibits laptop computers while accessing source code. The jointly-proposed protective order, at ¶¶ 9(b) and (d), provides undisputed language that a "single electronic copy" of source code "shall be provided on a stand-alone computer (i.e., not connected to a network or the Internet) in a secure

---

[3] See D.I. 25-1, ¶10, p.20 of 36.

room", available for inspection. Further, pursuant to ¶9(e) and also uncontested, the permitted agents for the party reviewing the source code cannot have "mobile phones of any kind", but they "shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes."

With this language as the frame of reference for my decision, it is obvious that the plaintiff, having already agreed to create a fairly impervious environment for its agents' access to the defendants' source code, has already conceded that any device that could undermine that environment would jeopardize the integrity of the defendants' "confidential, proprietary and/or trade secret" information. As such, with mobile phones and other devices that could be connected to a network or the Internet strictly prohibited[4], it is hard to imagine that a "personal laptop computer", even one temporarily unable to function as a camera, or temporarily disconnected and temporarily incapable of supporting through USB or other means an ability to acquire and/or transmit information obtained from the stand-alone computer, would qualify as acceptable under the protective order. The possibility of submitting a permanently unconnected and unconnectable laptop to a defendant for inspection beforehand is a moot point since plaintiff's counsel concedes that no such device is available. Consequently, to the extent that the plaintiff's agents want to take notes, that exercise will not occur on a laptop computer but will have to be hand-written.

The last issue deals with source code printing. The Default Standard for Access to Source Code that is approved for use in Delaware patent cases[5] provides (¶5) that, in the absence

---

[4] *See*, e.g., *EPL Holdings, LLC*, 2013 WL 2181584, *supra* at *5, 6 [where the court allowed the defendant, not the plaintiff, to provide alternative means of note-taking and communication].

[5] This Standard is characterized by the Court's website as one of its "Rules, Policies and Standing Orders", under the heading "Default Standard for Discovery".

of agreement among the parties, "Source code may not be printed or copied without the agreement of the producing party or further order of the court."   The litigants have already reached an agreement with regard to most aspects of the printing of source code[6].   There is only a disagreement about the numerical aggregate scope of the permissible printing, a "continuous block of source code that results in more than 10 printed pages" having already been mutually established as the cap for contiguity.   The plaintiff wants the ability to print 1,000 pages aggregate total; the defendants believe that 250 pages aggregate total will suffice.

Source code has been characterized as posing "a heightened risk of inadvertent disclosure".   *Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*, 2011 WL 197811, *2 (N.D. Calif. 2011).   Moreover, "because source code is extremely confidential…the burden should be on the party trying to convert source code to paper."   *Kelora Systems, LLC. V. Target Corp.*, 2011 WL 6000759, *6 (N.D. Calif. 2011).

I'm advised by the parties that they have just begun discovery.   That means that none of the parties, with perhaps one exception, have yet to comply with the Delaware Default Standard for Discovery Including Discovery of Electronically Stored Information[7], ¶4, **Initial Discovery in Patent Litigation**.   Consequently, for example, even if some core technical documents have been produced as required by ¶4b, the defendants have not produced source code pending the resolution of the present dispute.   And, the plaintiff has not yet complied with ¶4c by generating an initial claim chart that would likely demonstrate to the defendants some narrowing of the scope of source code which is the focus of the plaintiff's case.

---

[6] Under the label "**Additional Restrictions on Access to Source Code**", ¶¶ 9(k) and (m) of the proposed protective order.

[7] According to Judge Sleet's Scheduling Order [Patent], footnote 1, this Standard governs situations where the parties have been unable to agree on discovery of, e.g., electronic documents.

Given this state of incomplete discovery, we are probably not at a point yet where we know enough to establish the appropriate boundaries for "excessive" printing.   Until then, I will adopt the defendants' position for the proper threshold, i.e., 250 pages.   If it later becomes apparent that what's reasonably necessary in terms of printed source code for the plaintiff to prepare court submissions[8], the plaintiff can always apply to me in the unlikely event its necessarily reasonable request to a defendant for more than 250 pages is met with unalterable resistance[9].   In the meantime, there should be nothing preventing the plaintiff's agents from noting, in writing to the applicable defendant following the time of initial access, the page numbers (or other identifying nomenclature, such as file name and line number, if page numbers are not present[10]) that, had the present "excessive" threshold not been extant, they would have requested be printed, so that those pages (or file names/line numbers) can indeed be printed in the event the Court permits such.   This will avoid the necessity of plaintiff's agents returning to the stand-alone computer a second time.

IT IS SO ORDERED.

Paul M. Lukoff
Special Master

Dated:        August 27, 2014

_____

[8] *See, FarStone Technology, Inc. v. Apple, Inc.*, 2014 WL 2865786, *2, 3 (C.D. Calif. 2014)[ where a model protective order for that district was available as an instructive reference tool]

[9] The proposed protective order contains undisputed language by which the plaintiff can try to obtain additional printing under circumstances where the producing defendant cannot unreasonably withhold its consent. D.I. 25-1, p. 17 of 36, ¶9(m).

[10] The Default Standard for Access to Source Code, at ¶7, specifies that at a minimum, the stand-alone computer "must provide the ability to (a) view, search, and line-number any source file, (b) search for a given pattern of text through a number of files..."

8